# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| JEFFERY DUKE PARRIS, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 1:13-cv-01307-JEO |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Jeffery Duke Parris ("Parris") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his claim of disability. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 9). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be reversed and remanded.

## I. PROCEDURAL HISTORY

In a determination dated December 20, 2001, the Commissioner found Parris disabled

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

due to testicular cancer. (R. 76).[2] In 2009, the Commissioner performed a Continuing Disability Review and determined that Parris's condition had improved and that his disability ceased effective September 9, 2009. (R. 77-82). A Disability Hearing Officer upheld the determination. (R. 93-103). Parris then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 3, 2011. (R. 37-75 ). Following the hearing, the ALJ found that Parris's testicular cancer was no longer disabling as of September 2009. (R. 21). She further found that Parris has the severe impairments of borderline intellectual functioning and degenerative joint disease of the hip, but concluded that, despite these impairments, Parris is able to perform a significant number of jobs in the national economy. (R. 21-32). In light of these findings, the ALJ found that Parris was not disabled and that his previous disability ended as of September 2009. (R. 11-36).

Parris requested the Appeals Council to review the ALJ's decision. (R. 7). The Appeals Council denied Parris's request for review on May 31, 2013. (R. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. Parris then filed this action for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th

---

[2] References to "R. __" are to the page number of the administrative record, which is encompassed within Docs. 6-1 through 6-8.

Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

A claimant's disability benefits may be terminated upon a finding that there has been medical improvement in the claimant's impairment or combination of impairments (other than improvement not related to ability to work) and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). The regulations provide a multi-step process for determining whether disability benefits should be terminated.[3] 20 C.F.R. § 404.1594(f). The ALJ must determine in sequence:

(1)     Whether the claimant is engaging in substantial gainful activity;

---

[3] The regulations promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

    (2)       If not gainfully employed, whether the claimant has an impairment or combination of impairments that meets or equals a listing[4];

    (3)       If impairments do not meet a listing, whether there has been medical improvement;

    (4)       If there has been improvement, whether the improvement is related to the claimant's ability to do work;

    (5)       If there is improvement related to the claimant's ability to do work, whether an exception to medical improvement applies;

    (6)       If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

    (7)       If the claimant has a severe impairment, whether the claimant can perform past relevant work; and

    (8)       If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 762-63 (11th Cir. 2011) (citing 20 C.F.R. § 404.1594(f)).

## IV. FACTS

At the time of the ALJ's decision, Parris was 32 years old. (R. 31). In 2001 he was found to be disabled as a result of testicular cancer. (R. 76). His cancer was treated successfully and he was determined to be no longer disabled as of September 2009. (R. 77-82). Parris concedes that his cancer has resolved, but asserts that he is entitled to continuing disability benefits due to a mental impairment coupled with degenerative joint disease of the hip. (Doc. 10 at 2-13).

Parris was placed in Special Education at an early age. (R. 58). In 1995, at age 16, Parris

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1. This subpart is also referred to as the "Listing of Impairments" or the "Listings."

obtained a verbal IQ score of 54, a performance IQ score of 59, and a full scale IQ score of 52 on the Wechsler Intelligence Scale for Children–III. (R. 221-22). He left school at age 17 when he was in the tenth grade, after having spent four years in seventh grade before being promoted to tenth grade. (R. 44). He testified at the hearing that he cannot read and cannot write except for his name. (R. 52).

Parris's work history includes work as a gravedigger for two and one-half years (his longest period of employment), work as a press operator in a machine shop, and work as a backhoe operator. (R. 44-45, 48, 345-46). He has performed no substantial work since 2006. (R. 162).

Parris has a driver's license and owns a car. (R. 47). Because Parris has never had a checking or savings account, his mother wrote the monthly checks to pay for the car. (R. 48, 60-61). He uses the car to drive himself to the store and to visit family. (R. 54-56).

Parris has never lived alone. (R. 54). He has lived most of his life with his family, but as of 2011 has lived in his own home with his common-law wife. (R. 61, 345). He performs simple tasks such as sweeping and yard work, but does not cook. (R. 61, 188, 346). He watches television, talks on the phone, and "surfs" the Internet. (R. 190, 346). He has no hobbies. (R. 184).

Parris testified at the hearing that he has no hip socket and cannot sit or stand for extended periods due to hip pain. (R. 50-51). His mother confirmed that his hip deteriorated when he was five years old and that he had to wear a brace when he was younger. (R. 63). Parris's medical records reflect that he was treated for hip pain by Dr. Dorothy Nelder from March 2008 through March 2009. (R. 250-55). Dr. Nelder prescribed Lorcet for the pain, and

Parris reported at his last visit with Dr. Nelder that the medication "controlled" the pain. (R. 250). Parris was also treated by Dr. Daniel Sparks in February 2010. (R. 273-74). Dr. Sparks diagnosed Parris as suffering from arthritis of the hip with degenerative joint disease and developmental dysplasia of the hip. (R. 274). Dr. Sparks treated Parris with an injection and prescribed Meloxicam. (*Id.*). Parris returned for a follow-up visit in March 2010 and reported that his hip pain was "a little better" and that he was not interested in surgery. (R. 272). The record contains no other evidence of any treatment for hip problems.

Following the hearing, the ALJ referred Parris to Dr. Dana Davis for a consultive psychological examination. (R. 341-48). Dr. Davis examined Parris on February 23, 2011, and tested him using the Wechsler Adult Intelligence Scale - IV. (R. 347). Parris obtained a verbal comprehensive index score of 66, a perceptual reasoning index score of 71, a working memory index score of 69, a processing speed index score of 79, and a full scale IQ score of 65. (*Id.*) Dr. Davis noted that Parris's effort on the testing was "excellent" and that she believed the results "are a fairly good estimate of his current intellectual functioning." (R. 348). She further noted that Parris's overall score "falls within the range normally described as mild mental retardation." (*Id.*) Dr. Davis concluded her report as follows:

> Jeffery Parris is a pleasant, 32-year old male client with a history of what I believe to be a lower-than-average IQ, with testing most suggestive of mild retardation. This gentleman also is functionally illiterate. Beyond that, he has a fairly significant speech impairment that was noteworthy. All of these things taken together plus what would appear to be some functional limitations with his medical issues, then I would say that it probably would be difficult for Mr. Parris to be gainfully employed.

(*Id.*)

## V.  FINDINGS OF THE ALJ[5]

The ALJ found that as of September 2009, Parris's impairment of testicular cancer was resolved, but that he had the additional severe impairments of borderline intellectual functioning and degenerative joint disease of the hip.  (R. 17-18, 21).  The ALJ further found Parris did not have an impairment or combination of impairments that met or medically equaled one of the Listings.  (R. 18-20).  She specifically found that Parris's mental impairment did not meet the level of severity to satisfy any of the criteria under Listing 12.05, the listing for intellectual disability.[6]  (R. 19-20).

The ALJ determined that as of September 2009, Parris had the residual functioning capacity ("RFC") to perform a reduced level of light work subject to certain physical and mental limitations.[7]  (R. 21-30).  She limited Parris to unskilled work with simple, routine tasks that can be performed without a need to write or to follow written instructions.  (R. 21-22). Based on the testimony of a vocational expert, the ALJ concluded that, considering Parris's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Parris can perform.  (R. 31-32, 69-70).  The ALJ thus found that Parris is not disabled and that his disability ended as of September 2009. (R. 32).

---

[5] This discussion does not include all of the ALJ's findings, only those findings that are relevant to the issue Parris has presented for review.

[6] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. "On August 1, 2013, ... the Social Security Administration amended Listing 12.05 by replacing the words 'mental retardation' with 'intellectual disability' ... The Social Security Administration stated that the change 'does not affect the actual medical definition of the disorder or available programs or services.' " *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 982 n. 2 (11th Cir. 2013) (citations omitted).

[7] Residual functioning capacity is the most a claimant can do despite his impairment(s).  *See* 20 C.F.R. § 404.1545(a)(1).

## VI.  ANALYSIS

Parris argues that the ALJ erred in failing to find him disabled based upon his satisfaction of the requirements for presumptive disability under Listing 12.05(C).  (Doc. 10 at 2-3).  He argues that "the undisputed evidence ... establishes that [he] is functioning intellectually in the mild range of mental retardation rather than in the borderline range as found by the [ALJ]" and that "had the ALJ properly concluded that [he] was functioning in the mild range of mental retardation ... she would have clearly proceeded to the consideration of whether [Listing] 12.05(C) applies" and would have found that he satisfies the presumptive disability requirements of Listing 12.05(C).  (Doc. 10 at 3).  As discussed below, the court finds that the case should be reversed and remanded for further consideration of whether Parris is entitled to a finding of presumptive disability under Listing 12.05(C).

To meet Listing 12.05, an impairment must meet the diagnostic description in the introductory paragraph of the listing and one of the four sets of criteria that follow.  *See* Listing 12.00(A)[8] ("If your impairment meets the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing.").  The introductory paragraph of Listing 12.05 requires a claimant to show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  Listing 12.05.  To satisfy the required level of severity based on section C of Listing 12.05, a claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

---

[8] 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(A).

significant work-related limitation of function." Listing 12.05(C).

"Generally, a claimant meets the criteria for presumptive disability under [Listing] 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *Lowery v. Sullivan*, 979 F. 2d 835, 837 (11th Cir. 1992). In addition, "there is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60-70." *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) (citing *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001)). However, an IQ score alone is not conclusive evidence of a mental disability; "[t]he ALJ is required to examine the results [of an IQ test] in conjunction with other medical evidence and the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986); *see Long v. Colvin*, 2014 WL 1338503, *11 (N.D. Ala. March 31, 2014) ("Evidence of the claimant's IQ score, and thus his presumptive deficits in adaptive functioning, may be rebutted *if* the record evidence, including medical evidence, is inconsistent with his daily activities and behavior.") (citing *Popp*, 779 F.2d at 1499-1500)).

Here, the ALJ found that Parris's mental impairment "is not attended with the deficits in adaptive functioning as required to establish mental retardation" under Listing 12.05 and that his impairment "is more consistent with that of borderline intellectual functioning rather than mild mental retardation." (R. 20). The ALJ thus found that Parris's mental impairment did not meet the level of severity under any of the Listing 12.05 provisions. (R. 21-22). The court finds that the ALJ's findings are deficient for three reasons.

First, Parris's full scale IQ score of 65 creates a rebuttable presumption that he manifested

deficits in adaptive functioning prior to age 22. *Grant*, 255 F. App'x at 375; *Hodges*, 276 F.3d at 1269. The ALJ did not afford Parris the benefit of this presumption and, therefore, never addressed whether her findings regarding Parris's adaptive functioning skills were sufficient to rebut or overcome the presumption of deficits.

Second, the only medical evidence in the record regarding Parris's mental impairment reflects that Parris is functioning in the mild range of mental retardation, not the borderline range as found by the ALJ. The record contains the results of two intelligence tests taken by Parris – one when he was 16 and one when he was 32. (R. 222, 347). The results of both tests are consistent and place Parris in the range of mild mental retardation. The results of the second, more recent test were confirmed by Dr. Davis, who noted that Parris's effort on the testing was "excellent" and that the results were "a fairly good estimate of his current intellectual functioning" and were "most indicative of mild retardation." (R. 348). She diagnosed Parris's mental deficiency as mild mental retardation with functional illiteracy. (*Id.*)

The ALJ discredited the results of Parris's first IQ test, administered when Parris was 16, because "the psychometrist who administered the test did not provide a diagnosis or information to show that the scores were valid or appropriate." (R. 25). The ALJ also noted the psychometrist's observation that Parris "gave up on hard tasks," which the ALJ found "suggests [that Parris] did not give his full effort and that the scores would therefore likely be representative of underperformance rather than supportive of a mental retardation diagnosis."[9] (*Id.*) The ALJ further found that Parris's "later life demonstrates his capacity for adaptation that is inconsistent with these scores," pointing to his earnings history, his ability to drive, his

---

[9]The court would note that the psychometrist also observed that Parris "worked diligently." (R. 221).

purchase of two motor vehicles, his management of money, his performance of semi-skilled jobs, and the fact that he lived independently for several months. (R. 25-26).

Similarly, the ALJ discredited Dr. Davis's diagnosis of mild retardation with functional illiteracy because Parris's reported activities were "inconsistent with a finding that he has limited intellectual functioning consistent with mental retardation." (R. 26). The ALJ noted that Parris is married and resides in his own home with his wife; has work experience running a backhoe and a bulldozer and working at a machine shop and as a gravedigger; has a driver's license and is able to drive; and does yard work. (R. 26). The ALJ also questioned the validity of Dr. Davis's illiteracy determination in light of Parris's statement that he surfed the internet. (*Id.*)

What is missing from the record, however, is any medical evidence that supports the ALJ's decision to discredit Dr. Davis's opinion and Parris's IQ scores. In cases where the Eleventh Circuit has found that an ALJ properly discredited an IQ score or an accompanying medical opinion based on a clamant's daily activities and behavior, there has also been medical evidence that supported the ALJ's decision. *See, e.g., Perkins v. Comm'r, Soc. Sec. Admin.*, 2014 WL 223905, * 3 (11th Cir. Jan. 22, 2014) ("The ALJ's decision for not crediting [a physician's] opinion that [the claimant] suffered from mental retardation was supported by substantial evidence, as [the] opinion was based on contradictory claims by [the claimant] and inconsistent with other medical opinions."); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984-85 (11th Cir. 2013) (substantial evidence supported the ALJ's finding that the claimant lacked the required level of deficits in adaptive functioning to meet Listing 12.05, where five separate medical opinions attested to the claimant's ability to function at a higher level than her IQ scores represented); *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897 (11th Cir. 2013)

("Given that the administering physician ... felt that [the claimant's] IQ scores underestimated her intelligence, the ALJ properly determined that [the claimant] did not present a valid IQ score of 60 through 70."); *Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006) (substantial evidence supported the ALJ's conclusion that the claimant did not satisfy Listing 12.05(C), where his IQ scores from his developmental period showed that he had an IQ above 70 and two psychologists concluded that he functioned in the borderline range of intellectual functioning).

The record in this case lacks such supporting medical evidence. Rather, as noted above, Dr. Davis expressly noted in her evaluation report that Parris's overall IQ score fell within the range of mild mental retardation and that this was "a fairly good estimate of his current intellectual functioning." (R. 348). The only other medical evidence in the record regarding Parris's mental abilities – his IQ scores from age 16 – is entirely consistent with this determination. Even assuming that there were good reasons to discredit Parris's IQ scores from age 16, they do not conflict with Dr. Davis's opinion that Parris suffers from mild mental retardation. Indeed, no medical evidence in the record conflicts with Dr. Davis's opinion.

Third, apart from the absence of any medical evidence supporting the ALJ's determination that Parris does not suffer from mild mental retardation, it is far from clear that Parris has the degree of adaptive functioning necessary to overcome the presumption of deficits associated with his low IQ scores (a presumption the ALJ did not apply). As one district court in this circuit has observed, "The caselaw addressing the 'adaptive functioning' aspect of Listing 12.05C suggests that the adaptive functioning must be significantly inconsistent with the I.Q. score. An ability to do simple daily activities and simple jobs is not enough." *Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2007) (analyzing cases). For instance, in the oft-cited

12

case of *Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986), the Eleventh Circuit upheld the ALJ's finding that the claimant was not mentally retarded notwithstanding an IQ score of 69, where the claimant had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs including administrative clerk, statistical clerk, and algebra teacher.  Here, in contrast, Parris was always in special education while in school, spent four years in the seventh grade, dropped out of school at age 17, and never graduated.  In addition, although he has performed semi-skilled work operating a backhoe and a bulldozer, he has never held a skilled position and has never managed others.  *See Perkins*, 2014 WL 223905 at *3 (upholding the ALJ's finding that the claimant's adaptive functioning precluded him from meeting Listing 12.05(C) where, among other evidence, the evidence reflected that the claimant had worked as a skilled cook and had managed others).  And his ability to do simple chores such as cutting grass and raking leaves is no more indicative of borderline intellectual functioning than mild mental retardation.

      Moreover, much of the evidence relied upon by the ALJ in making her adaptive functioning assessment is either undeveloped or inconsistent with other evidence.  The ALJ noted that Parris purchased two motor vehicles with the required insurance, but the record does not reflect whether Parris purchased the vehicles on his own or whether he had assistance in making the purchases.  The ALJ observed that Parris reported surfing the internet, but there is no evidence in the record as to what that entails or whether he needs any assistance when doing so.  The ALJ stated that Parris manages his own money, but he has never had a checking account or savings account and he testified that he would just cash his checks and give the money to his mother.  (R. 48).  The ALJ stated that Parris has lived independently for several months, but the

evidence reflects that he has been living with his common-law wife and not alone. (R. 345). The record is also unclear as to how he was able to obtain a driver's license. (*See* R. 62).

Accordingly, given that (1) the ALJ did not afford Parris the presumption of deficits in adaptive functioning to which he was entitled based on his IQ scores, (2) the record contains no medical evidence to support the ALJ's finding that Parris does not suffer from mild mental retardation notwithstanding his low IQ scores and the medical opinion of Dr. Davis, and (3) the evidence of Parris's adaptive functioning is inconsistent at best, the court finds that the ALJ's determination that Parris does not have the impairment of mild mental retardation is not supported by substantial evidence. Because neither party has challenged the ALJ's finding that Parris also has the severe physical impairment of degenerative joint disease of the hip, the court concludes that the case should be remanded for further consideration of whether Parris is entitled to a finding of presumptive disability under Listing 12.05(C). In this regard, the court notes that it may be appropriate for the Commissioner to order a second consultive psychological examination of Parris in light of the ALJ's issues with Dr. Davis's opinion.

## VII.  CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **REVERSED** and **REMANDED**. An appropriate order will be entered separately.

**DONE**, this the 26th day of August, 2014.

_John E. Ott_
**JOHN E. OTT**
Chief United States Magistrate Judge